IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                       No. CR 22-1010 JB

JAMES ANTHONY SANDOVAL,

    Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant James Anthony Sandoval's Email to the Court, Re: USA v. Sandoval, 22-CR-1010 JB, Additional Proposed Jury Instruction (dated Friday, December 16, 2022), filed December 16, 2022 (Doc. 88)("Proposed Instruction Email"). The Court heard argument on Sandoval's proposed instruction on the final day of trial, December 16, 2022. See Clerk's Minutes for Jury Trial Held December 13, 2022, to December 16, 2022, at 13-15 (dated December 13, 2022), filed December 13, 2022 (Doc. 95)("Clerk's Minutes").[1] The primary issue is whether the Court should put in a jury instruction definition that instructs the jury on the regulatory meaning of "income" for Social Security Insurance benefits purposes, as Sandoval requests. The Court concludes that it will not provide a jury instruction definition which instructs the jury on the regulatory meaning of "income" for Social Security Insurance benefits purposes, because: (i) the instruction the Court will use regarding the elements of a conviction under 18 U.S.C. § 641 accurately states the applicable law and is not misleading; (ii) the Court determines that Sandoval's arguments regarding the regulatory definition of

---

[1]Although Clerk's Minutes are dated on the first day of trial, these minutes contain information from throughout the entire trial. See Clerk's Minutes at 1-16.

"income" are better suited to closing argument; and (iii) the addition of an "income" definition in the manner that Sandoval requests would be confusing to the jury members. Accordingly, the request made in the Proposed Instruction Email is denied.

### FACTUAL BACKGROUND

The Court provides the following facts solely for the purpose of this Memorandum Opinion and Order, and to provide background and context for the Court's discussion of the proposed jury instruction. The Court derives these facts from the Indictment, see Superseding Indictment, filed November 23, 2022 (Doc. 28)("Indictment"), and the parties' Joint Statement of the Case, filed December 8, 2022 (Doc. 51)("Case Statement"). Sandoval is presumed innocent, and the Court acknowledges that most of the facts are the United States' version of the story.

In this case, the United States alleges that Sandoval violated three federal statutes: Theft of Government Property, contrary to 18 U.S.C. § 641; Making False Statements, contrary to 18 U.S.C. § 1001(a)(2); and False Statement in a Social Security Form, contrary to 42 U.S.C. § 408(a)(3). See Indictment at 1. The United States alleges that Sandoval stole United States property by receiving -- over a period spanning from June, 2017, until February, 2020[2] -- Social Security Disability Insurance ("SSDI") benefits to which he was not entitled under law. See Case Statement at 1. According to the United States, the reason that Sandoval is not entitled to these benefits is that, despite Sandoval's representations that he was not working or earning money because of a disability, he was working and earning income that was sufficient to put him over the

---

[2]Originally, the United States' charging period for the 18 U.S.C. § 641 charges began in June, 2017, and ended in June, 2021. On the eve of trial, however, the United States moved to dismiss sixteen of its original counts, shortening the charging period to June, 2017, until February, 2020. See Motion to Dismiss Counts 34-49 of the Superseding Indictment, filed December 13, 2022 (Doc. 68). The Court granted that motion on December 19, 2022. See Order to Dismiss Counts 34-49 of the Superseding Indictment, filed December 19, 2022 (Doc. 85).

relevant earning threshold to receive SSDI benefits.  See Indictment at 1; Case Statement at 1-2. The United States also contends that, during the investigation into these allegations, Sandoval lied to federal agents about whether he was able to work and whether he had received any income.  See Case Statement at 1-2.

## PROCEDURAL BACKGROUND

The week before trial, the United States filed its United States' Proposed Jury Instructions, filed December 7, 2022 (Doc. 49).  Sandoval filed his proposed instructions the following day. See Defendant's Proposed Jury Instructions at 1, filed December 8, 2022 (Doc. 53)("Sandoval's First Proposed Instructions").  The Court filed its first proposed jury instructions on December 15, 2022.  See Court's First Proposed Final Jury Instructions, filed December 15, 2022 (Doc. 76).  On December 16, 2022, just before lunchtime, Sandoval sent the Proposed Instruction Email to the Court's proposed text email address.  See Proposed Instruction Email at 1.  The attorneys for the United States were copied on the Proposed Instruction Email, which reads:

> Dear Judge Browning --
>
> Based on the evidence presented today, the defense proposes the following additional jury instruction:
>
> **Instruction No. ___:**
>
> For purposes of Social Security Disability Insurance benefits, the "income" of a self-employed person is based on his net earnings from self-employment during a taxable year.[1]  "Net earnings" means gross income minus any deductions and expenses of the business for its operation.[2]
>
> [1] 20 C.F.R. **§ 404.1001(a)(5)**.
> [2] 20 C.F.R. **§ 404.1080; 26 U.S.C. § 1402(a).**

Proposed Instruction Email at 1.  Later that afternoon, Sandoval argued for the inclusion of this instruction.  See Draft Transcript of Trial, Day 4 at 92:10-95:24 (held December 16, 2022)(Court,

Harrison, Houghton)("Tr.").[3]  He stated: "I think it was clear from the testimony of the witnesses consistently people were not able to identify what income meant," and "[n]o one used the phrase net earnings."  Tr. at 92:17-20 (Harrison).  According to Sandoval, this lack of precision is a problem: a determination of "net earnings" is what is "required by the regulations for eligibility for these benefits."  Tr. at 92:20-22 (Harrison).  Sandoval argues that his proffered instruction -- which includes citations to the SSDI regulatory framework, see Proposed Instruction Email at 1 -- will be helpful to the jury "given the extensive confusion that we've had with the financial evidence and the presentation of deposits and transfers in as potentially being equivalent to income."  Tr. at 93:4-7 (Harrison).  Sandoval states that he believes that understanding "what income is[,] is going to end up being critical to this case," and thus clarity on this point -- which his proposed instruction offers -- is necessary.  Tr. at 93:16-17 (Harrison).  As for placement, Sandoval requests that this instruction would come "immediately after the [18 U.S.C. §] 641 count."  Tr. at 92:13 (Harrison).

In response, the United States contended that, throughout the trial, "we did not delve into the regulations at all," and asserted that Sandoval is "looking to buttress" his case "by bringing in statutes that I think will be confusing because no one talked about these statutes, nobody talked about this definition."  Tr. at 93:22-94:3 (Houghton).  The United States noted that Sandoval is entitled to argue his theory regarding deductions and net income to the jury, but that "bringing in the statute per the regulation seems unhelpful to the juror."  Tr. at 94:9-10 (Houghton).  Sandoval replied that "income is a word that's used throughout the instructions," and, moreover, that income is central to a determination whether Sandoval is entitled to the SSDI benefits, and "entitlement is

---

[3]The Court's citations to the hearing transcript refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

an enormous part of what the case hi[nges] on." Tr. at 94:19-20 (Harrison). Sandoval concluded by stating that he is entitled to have the Court give the income instruction as a way to help the jury sort through the case's financial information evidence, and to give the jury "road maps to determine whether or not they mean w[hat] the Government says they should mean in terms of income." Tr. at 94:21-95:5 (Harrison).

The Court stated it would leave out the instruction. See Tr. at 95:12-13 (Court). The Court told Sandoval that he may refer to the definition in closing arguments and "put it up in front of the jury," but that it would not add the proffered definition to the jury instructions. Tr. at 95:12-13 (Court). The Court noted that much of the earnings-related evidence in this case is circumstantial, and that the evidence does not provide "a clear pattern of what were expenses and what [were] deposits or income." Tr. at 95:18-19 (Court).

## LAW REGARDING THE ADEQUACY OF THE JURY INSTRUCTIONS

On the level of an individual instruction, the United States Court of Appeals for Tenth Circuit "review[s] the district court's decision to give or to refuse a particular jury instruction for abuse of discretion." United States v. Bedford, 536 F.3d 1148, 1152 (10th Cir. 2008)(citing United States v. Nacchio, 519 F.3d 1140, 1158 (10th Cir. 2008), vacated in part on other grounds on reh'g en banc, 555 F.3d 1234 (10th Cir. 2009); United States v. McClatchey, 217 F.3d 823, 834 (10th Cir. 2000)). The Tenth Circuit also reviews "for abuse of discretion a district court's shaping or phrasing of a particular jury instruction." United States v. Bedford, 536 F.3d at 1152. In assessing an individual instruction's propriety, "[i]t is not error to refuse to give a requested instruction if the same subject matter is adequately covered in the general instructions." United States v. Miller, 460 F.2d 582, 588 (10th Cir. 1972). See United States v. Smalls, 752 F.3d 1227, 1246 (10th Cir. 2014)(citing and applying United States v. Miller).

When reviewing the instructions' adequacy as a whole, however, the Tenth Circuit's

review is de novo.  See United States v. Haslip, 160 F.3d 649, 654 (10th Cir. 1998)("We review a district court's decision whether to give a particular jury instruction for abuse of discretion. We conduct a de novo review to determine whether, as a whole, the instructions themselves correctly stated the applicable law.").  This test is whether, "'in the context of the entire trial,'" the instructions "'accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case.'"  United States v. Kalu, 791 F.3d 1194, 1200-01 (10th Cir. 2015)(quoting United States v. Thomas, 749 F.3d 1302, 1312 (10th Cir. 2014)).  Another way the Tenth Circuit has phrased this central inquiry is "whether, considering the instructions as a whole, the jury was misled." United States v. Winchell, 129 F.3d 1093, 1096 (10th Cir. 1997)(citing United States v. Smith, 13 F.3d 1421, 1424 (10th Cir. 1994)).

The Tenth Circuit has stated that it will reverse only where there is substantial doubt the jury was fairly guided:

> If, as a whole, the instructions correctly state the law and provide the jury with an "intelligent, meaningful understanding of the applicable issues and standards," we will not reverse.  *United States v. Laughlin*, 26 F.3d 1523, 1528 (10th Cir. 1994). In other words, reversal is not appropriate unless we have "substantial doubt that the jury was fairly guided."  *United States v. Mullins*, 4 F.3d 898, 900 (10th Cir. 1993).

United States v. Winchell, 129 F.3d at 1096.  In United States v. Winchell, the Tenth Circuit instructed that, rather than provide juries with a separate instruction about specific intent, the Tenth Circuit prefers the district courts to provide instructions informing juries of the mens rea element for the particular offense and define each element clearly and accurately:

> [A]s we have previously noted, "instructing in terms of 'specific intent' has been disfavored by the courts because of the confusing and ambiguous nature of such an instruction." *Laughlin*, 26 F.3d at 1527 (citing *Liparota v. United States*, 471 U.S. 419, 433 n. 16 . . . (1985)).  Instead, we have endorsed instructions which adequately "apprise the jury of the mens rea element of the offense," *id.* at 1527, and which "define each element of the offense clearly and accurately." *Id.* at 1528.

United States v. Winchell, 129 F.3d at 1096-97.  "Even when the district court fails to include an element of the crime in the instruction (including a mens rea element), we still apply the harmless error rule."  United States v. Sorensen, 801 F.3d 1217, 1229 (10th Cir. 2015).  Although "[a] defendant charged with a specific-intent, federal criminal tax offense can negate the element of willfulness necessary to prove the violation, thereby providing a defense to the conduct charged, if the defendant establishes that he or she sought in good faith to comply with the relevant law," United States v. Lindsay, 184 F.3d 1138, 1140 (10th Cir. 1999)(citing Cheek v. United States, 498 U.S. at 201), "a theory of defense instruction is required only if, without the instruction, the district court's instructions were erroneous or inadequate," United States v. Bowling, 619 F.3d 1175, 1183 (10th Cir. 2010)(quoting United States v. Williams, 403 F.3d 1188, 1195 (10th Cir. 2005)).  "While a defendant is entitled to an instruction on his theory of defense where some evidence and the law supports the theory, such an instruction is not required if it would 'simply give the jury a clearer understanding of the issues.'"  United States v. Bowling, 619 F.3d at 1183-84 (quoting United States v. Williams, 403 F.3d at 1195).

In United States v. Bowling, 343 F. App'x 359 (10th Cir. 2009)(unpublished), a jury found the defendant guilty of bank fraud, a specific intent crime, and the Tenth Circuit initially reversed the defendant's conviction and remanded for a new trial, because the judge failed to include a separate good-faith defense instruction.  See 343 F. App'x at 364-367.  In the unpublished opinion, the Tenth Circuit reasoned that, while a theory-of-defense instruction usually is required only if the instructions otherwise are erroneous or inadequate, "[i]n fraud cases . . . we treat a defendant's request for a good faith instruction with some differences.  A 'defendant is entitled to a good faith instruction when he has interposed the defense of good faith, has requested the instruction, and when there is sufficient evidence to support it.'"  United States v. Bowling, 343 F. App'x at 364-

365 (quoting United States v. Overholt, 307 F.3d 1231, 1247 (10th Cir. 2002)). Following the filing of the unpublished opinion, the United States then filed a petition for rehearing en banc, asking the Tenth Circuit to review its holding in United States v. Hopkins, 744 F.2d 716 (10th Cir. 1984), which requires an additional good-faith defense instruction if sufficient evidence supports the good-faith defense. The Tenth Circuit, sitting by panel, but circulating the opinion to all active members of the Tenth Circuit, granted the United States' request and overturned United States v. Hopkins. See United States v. Bowling, No. 08-6184, 2009 WL 6854970, at 1 n.* (10th Cir. December 23, 2009).

In United States v. Bowling, the Tenth Circuit explains its reasoning for departing from its decision in United States v. Hopkins requiring a separate good-faith defense instruction in bank fraud cases:

> [W]ith the unanimous concurrence of all our active judges, [] our prior decision in *United States v. Hopkins*, 744 F.2d 716 (10th Cir. 1984)(en banc) is overruled for two reasons. First, in the twenty-five years since we issued *Hopkins*, every one of our sister circuits has come to reject the idea that district courts must give a separate "good faith" jury instruction in fraud cases. As they have explained, and we agree, a separate good faith instruction is not necessary "because a finding of the intent to defraud . . . necessarily implies that there was no good faith." *United States v. Chavis*, 461 F.3d 1201, 1209 n.1 (10th Cir. 2006)(cataloguing the views of every other circuit). Second, while we indicated in *Hopkins* that failure to give a good faith instruction was per se reversible error, the Supreme Court has since explained that a "trial court's failure to instruct a jury on all of the statutory elements of an offense is subject to harmless-error analysis." *Mitchell v. Esparza*, 540 U.S. 12, 16 . . . (2003)(per curiam); *see also Neder v. United States*, 527 U.S. 1, 9 . . . (1999)("[A]n instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence."); Fed. R. Crim. P. 52(a).

United States v. Bowling, 2009 WL 6854970, at *1 n.*. See United States v. Kearney, No. CR 19-2848, 2023 WL 5176276, at *26-29 (D.N.M. August 11, 2023)(Browning, J.)(discussing the propriety of the Court's advice-of-counsel defense instruction).

United States v. Wolny, 133 F.3d 758 (10th Cir. 1998)("Wolny"), further illuminates the

- 8 -

Tenth Circuit's principles regarding defense-theory-related jury instructions. In <u>Wolny</u>, a jury convicted the defendant Boleslaw Wolny of attempted money laundering in violation of 18 U.S.C. § 1956(a)(3)(B). To be found guilty under this statute, the jury must find, among other things, that the defendant "believed [the funds-to-be-laundered] to be the proceeds of specified unlawful activity," and that the defendant intended "to conceal or disguise the nature, location, source, ownership, or control" of those funds. 18 U.S.C. § 1956(a)(3)(B). See <u>Wolny</u>, 133 F.3d at 766. At trial, Wolny requested that the district court give a jury instruction that related to his defense theories. See 133 F.3d at 766. Specifically, Wolny's requested instruction

> would have informed the jury that the defense's theory was two-fold: . . . The defense's first theory was the government had not proven that Mr. Wolny believed the proceeds were drug money . . . . The defense's second theory was that the government had not proven that Mr. Wolny intended to conceal 'the nature, source, location, ownership or control' of the currency.

133 F.3d at 766 (quoting Appellant's Br.). The district court did not instruct the jury as Wolny requested, instead providing an instruction that outlined the elements of 18 U.S.C. § 1956(a)(3)(B), which the United States was required to prove beyond a reasonable doubt. See 133 F.3d at 766. Wolny appealed to the Tenth Circuit, arguing that "the district court erred in refusing to give a proposed jury instruction on the theory of the defense." 133 F.3d at 765. His argument relied on the Tenth Circuit's statement in <u>United States v. Scafe</u>, 822 F.2d 928 (10th Cir. 1987), that, "when a defendant presents evidence supporting a theory of defense, the trial court should refer to that theory and to the testimony bearing on it and submit the issue with an instruction on the applicable law." 822 F.2d at 932.

The Tenth Circuit affirmed the district court's decision not to provide the jury with Wolny's proffered instruction. See <u>Wolny</u>, 133 F.3d at 765-67. The Tenth Circuit reasoned:

> The theory of the defense was simply that the government failed to prove essential elements of the offense. In the instructions given, the district court informed the

- 9 -

jury about the elements of the offense and about the government's burden of proving each element beyond a reasonable doubt. *See id.* at 29, 31 (instrs. nos. 12, 14). Mr. Wolny's proposed instruction did not concern an affirmative defense, of which the district court did not apprise the jury. Because "the substance of [the proposed] instruction was contained in the charge given to the jury," *United States v. Pinto,* 838 F.2d 426, 436 (10th Cir.1988), Mr. Wolny was not entitled to a separate instruction on the theory of the defense.

Wolny, 133 F.3d at 766. As for United States v. Scafe's statement that "when a defendant presents evidence supporting a theory of defense, the trial court should refer to that theory and to the testimony bearing on it," 822 F.2d at 932, the Tenth circuit in Wolny determined that this statement "is dicta," because, in United States v. Scafe, the Tenth Circuit "held that the evidence did not support the theory of the defense and that, therefore, no instruction on that theory was required" and therefore there was "no occasion to consider how a particular 'theory of the defense' instruction should be worded," Wolny, 133 F.3d at 766 (quoted material not cited, but presumably United States v. Scafe, 822 F.2d at 932). Instead, the Tenth Circuit in Wolny noted:

> Rather, consistent with the discretion district judges have in wording instructions, *see* [United States v.] *Grey,* 56 F.3d [1219,] at 1222 [(10th Cir. 1995)], we have rejected attempts to require "instructions [that] are essentially summaries of the evidence in the light most favorable to the defense, summaries [that are] more appropriate for closing argument." [United States v.] *Davis,* 953 F.2d [1482] at 1492 [(10th Cir. 1992)]. Mr. Wolny's proposed instruction was such a summary.

Wolny, 133 F.3d at 766 (second brackets in Wolny). The Tenth Circuit concluded that "taken as a whole, the instructions accurately apprised the jury of the issues and the governing law. We disagree with Mr. Wolny that the instructions contained errors that his proposed instruction would have cured." 133 F.3d at 767. See Wolny 133 F.3d at 765 ("A 'theory of the defense' instruction is not required if it would simply give the jury a clearer understanding of the issues." (quoting United States v. Grey, 56 F.3d 1219, 1222 (10th Cir. 1995)). See United States v. Williamson, No. CR 11-2784, 2013 WL 1658021, at *16 (D.N.M. March 20, 2013)(Browning, J.)(analyzing whether a set of jury instructions accurately stated the relevant law's elements).

**ANALYSIS**

The Court concludes that it will not provide a jury instruction definition which instructs the jury on the regulatory meaning of "income" for Social Security Insurance benefits purposes. The Court reaches this conclusion, because: (i) the instruction the Court will use regarding the elements of a conviction under 18 U.S.C. § 641 accurately states the applicable law and is not misleading; and (ii) the Court determines that Sandoval's arguments regarding the regulatory definition of "income" are better suited to closing argument, and, moreover, addition of an "income" definition in the manner that Sandoval requests would be confusing to the jury members. The Court explains these conclusions in turn.

**I.     THE COURT'S INSTRUCTION ON SANDOVAL'S 18 U.S.C. § 641 CHARGE ACCURATELY STATES THE LAW AND IS NOT MISLEADING.**

Fundamentally, Sandoval's request to add an "income" definition relates to the manner in which the Court instructs the jury on Sandoval's counts of Theft of Government Property under 18 U.S.C. § 641. This is because, as noted above, Sandoval argues that a determination of "net earnings" is "required by the regulations for eligibility" to the SSDI benefits that Sandoval is accused of stealing, and a definition of "income" is important to evaluating Sandoval's net earnings. Tr. at 92:20-22 (Harrison). In this sense, the requested definition income purports to add clarity to the 18 U.S.C. § 641 instruction, and indeed, Sandoval requests that this instruction would come "immediately after the [18 U.S.C. §] 641 count." Tr. at 92:13 (Harrison).

The Court concludes, however, that the Court's instruction on the 18 U.S.C. § 641 counts is -- on its own -- a complete and accurate statement of law, and is not misleading. On those counts, the Court instructs the jury, among other things, that:

> Mr. Sandoval is charged in counts 1 to 33 of the indictment with violation of 18 U.S.C. § 641.
>
> This law makes it a crime to steal government property. Mr. Sandoval is

accused of stealing Social Security Disability funds to which he was not entitled.

To find Mr. Sandoval guilty of these crimes you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: the Social Security Disability Insurance benefits payments belonged to the United States government and not to Mr. Sandoval -- that is, he was not entitled to receive those payments. It does not matter whether Mr. Sandoval knew that the Social Security Disability funds belonged to the United States government, only that he knew he was not entitled to them;

*Second*: Mr. Sandoval stole the Social Security Disability Insurance benefits payments intending to put it to his own use or gain;

*Third*: Mr. Sandoval acted knowingly and willfully with the intent to deprive the United States government of the use of those funds; and

*Fourth*: the value of the Social Security Disability Insurance benefits payments was more than $1,000.

"Value" means the face, or market value, or cost price, either wholesale or retail, whichever is greater.

Social Security Disability Insurance benefits payments are considered "property" and "a thing of value of the United States" within the meaning of 18 U.S.C. § 641.

Court's Final Jury Instructions, Jury Instruction No. 11 at 14, filed December 16, 2022 (Doc. 80)("Court's Final Instructions"). This instruction is substantively identical to Sandoval's requested instruction on 18 U.S.C. § 641, and the elements are almost verbatim identical:

Mr. Sandoval is charged in Counts 1 through 49 of the Superseding Indictment with a violation of 18 U.S.C. § 641.

This law makes it a crime to steal government property. Mr. Sandoval is accused of stealing Social Security Disability funds, with each of the 49 counts relating to a specific month from June 2017 to June 2021.

To find Mr. Sandoval guilty of these crimes, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: the Social Security Disability benefits payments belonged to the United States government and not to Mr. Sandoval -- that is, he was not entitled to receive those payments. It does not matter whether Mr. Sandoval knew that the

Social Security Disability funds belonged to the United States government, only that he knew he was not entitled to them.

*Second*: Mr. Sandoval stole the Social Security Disability benefits payments intending to put them to his own use or gain.

*Third*: Mr. Sandoval acted knowingly and willfully with the intent to deprive the United States government of the use of those funds.

*Fourth*: the value of the Social Security Disability benefits payments was more than $1,000. "Value" means the face, or market value, or cost price, either wholesale or retail, whichever is greater.

Each count must be proved beyond a reasonable doubt, meaning that in order to find Mr. Sandoval guilty on any of Counts 1 through 49, you must find that the government met its burden of proving all the above elements as to that month.

Defendant's Proposed Instructions, Instruction No. 17 at 24, filed December 12, 2022 (Doc. 62-1). Moreover, the Court's instruction is modeled after Pattern Instruction 2.31, from the Criminal Pattern Jury Instructions for the United States Court of Appeals for the Tenth Circuit, which reads:

The defendant is charged in count _____ with a violation of 18 U.S.C. section 641.

This law makes it a crime to [steal] [embezzle] [convert] government property. The defendant is accused of [stealing] [embezzling] [converting] [name property].

To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: the [name property] belonged to the United States government [if lack of knowledge is asserted, add: It does not matter whether the defendant knew that the [name property] belonged to the United States government, only that he knew it did not belong to him.];

*Second*: the defendant [stole] [embezzled] [converted] the [name property] intending to put it [to his own use or gain] [to the use or gain of another] or the defendant took the [name property] knowing it was not his and intending to deprive the owner of the use or benefit of the [name property]; and

*Third*: the value of the [name property] was more than $1,000.

"Value" means the face, or market value, or cost price, either wholesale or

retail, whichever is greater.

Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, Pattern Instruction 2.31 at 132 (2021 edition, updated 2023)(THEFT OF GOVERNMENT PROPERTY 18 U.S.C. § 641)(all brackets in original).  The most substantial change between the Court's Instruction No. 11 and Pattern Instruction 2.31 is the Court's addition of a "knowingly and willfully" element, which the Court added at Sandoval's request.  See Defendant's Objections to Court's Second Proposed Preliminary Jury Instructions at 3, filed December 12, 2022 (Doc. 61)("Mr. Sandoval also added an explicit element to the instruction informing the jury that the Government must prove he acted '*knowingly and willfully*.'" (quoting Morissette v. United States, 342 U.S. 246, 269-70 n.30 (1952), and citing Indictment)(emphasis in Defendant's Objections to Court's Second Proposed Preliminary Jury Instructions, but not in Morissette v. United States).

The Court concludes that its instruction on 18 U.S.C. § 641 is an accurate statement of law.  It articulates the statute's essential elements, and adds nuance that the case law provides.  See 18 U.S.C. § 641; Morissette v. United States, 342 U.S. at 269-70 n.30.  Moreover, the instruction comports with the Tenth Circuit's pattern instruction on this crime, and is not presented in a way that is confusing or misleading.  Specifically, as it pertains to the first element of the instruction, which Sandoval argues is central to this case, see Tr. at 94:19-20 (Harrison), the Court's instruction is clear: to determine whether the property in question belongs to the United States, the jury must determine whether Sandoval "was not entitled to receive those payments."  Court's Final Instructions at 14.  The instruction correctly articulates the question of Sandoval's entitlement to the SSDI benefits, and the jury therefore knows the relevant legal questions that must guide its factual determinations.  Accordingly, the Court concludes that the jury instruction on Sandoval's

18 U.S.C. § 641 count "'accurately state[s] the governing law and provide[s] the jury with an accurate understanding of the relevant legal standards and factual issues in the case.'" United States v. Kalu, 791 F.3d at 1200-01 (quoting United States v. Thomas, 749 F.3d at 1312).

**II.    SANDOVAL'S PROFFERED DEFINITION OF "INCOME" IS BETTER SUITED TO HIS CLOSING ARGUMENT, AND, MOREOVER, ADDING HIS PROFFERED DEFINITION IMMEDIATELY AFTER THE COURT'S INSTRUCTION ON 18 U.S.C. § 641 WOULD BE CONFUSING TO THE JURY.**

Again, Sandoval's argument for the inclusion of the "income" instruction relies on the proposition that, without such an instruction, the jury is unequipped to determine whether Sandoval "was not entitled to receive [the SSDI] payments." Court's Final Instructions at 14. See Tr. at 94:19-95:5 (Harrison). In other words, Sandoval contends that a definition of "income" is important to the question of SSDI benefits entitlement, which is "an enormous part of what the case hi[nges] on." Tr. at 94:19-20 (Harrison). Indeed, this idea is central to Sandoval's theory of the case, which asserts that Sandoval's actual income -- gross income minus the applicable deductions and expenses -- is below the relevant threshold for receiving SSDI benefits. See Tr. at 93:16-17 (Harrison); id. at 142:9-146:2 (Harrison). In this sense -- as explained above -- Sandoval's proffered instruction helps explain his theory why the United States is unable to prove the first element of its 18 U.S.C. § 641 charge.

The Court concludes that this proposed instruction falls into the category of instructions that "would simply give the jury a clearer understanding of the issues" to aid Sandoval's theory of his defense. Wolny 133 F.3d at 765. Moreover, in the Court's experience, both the United States and defendants love to have the Court telling the jury about the case, because what comes out of the Court's mouth carries special weight. In recognition of this effect, the Court tries to give the jury the tools to do its job without putting its thumb on the scale by giving the jury one party's preferred emphasis. Here, relying on its discretion to shape or phrase particular jury instructions,

- 15 -

see United States v. Bedford, 536 F.3d at 1152, the Court concludes that it will not add Sandoval's added definition to the jury instructions. To do otherwise would be to put the Court's thumb on the scale by explaining to the jury something that Sandoval wants to tell it during closing argument. The Court will, however, allow Sandoval to publish to the jury the regulatory income definition during closing argument, and advocate for Sandoval's innocence based on his theory of net income and deductions. See Wolny, 133 F.3d at 766; Tr. at 95:12-13 (Court).

Additionally, the Court concludes that a definition of income directly after the Court's definition of 18 U.S.C. § 641 would be confusing to the jury members. The Court reaches this conclusion, because, although Sandoval asserts that "income is a word that's used throughout the instructions," Tr. at 94:19-20 (Harrison), the Court's jury instruction regarding 18 U.S.C. § 641 does not contain the word income, see Court's Final Instructions at 14, supra, at 11-12. This incongruence -- a detailed definition of a regulatory term immediately after an instruction that does not use that term -- might plausibly confuse the members of the jury. As a result, the Court, again relying on its discretion to shape or phrase particular jury instructions, see United States v. Bedford, 536 F.3d at 1152, concludes that it will not add Sandoval's income definition to the jury instructions.

**IT IS ORDERED** that the request made in Defendant James Anthony Sandoval's Email to the Court, Re: USA v. Sandoval, 22-CR-1010 JB, Additional Proposed Jury Instruction (dated Friday, December 16, 2022), filed December 16, 2022 (Doc. 88), is denied.

_____
UNITED STATES DISTRICT JUDGE

- 17 -

*Counsel:*

Alexander M.M. Uballez
  United States Attorney
Kristopher N. Houghton
Raquel Ruiz-Velez
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

Paul J. Kennedy
Elizabeth Harrison
Kennedy Hernandez & Harrison, P.C.
Albuquerque, New Mexico

        *Attorneys for the Defendant*